# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RICHARD IVY,   *

Petitioner   *

v   *   Civil Action No. PX-17-816

TIMOTHY S. STEWART,   *

Respondent   *

  ***

## MEMORANDUM

Petitioner Richard Ivy, a federal inmate currently confined at the Federal Correctional Institution in Cumberland, Maryland, filed this habeas action pursuant to 28 U.S.C. § 2241, alleging the Federal Bureau of Prisons has failed to properly calculate his sentence. ECF No. 1.

Respondent, Timothy S. Stewart, the Warden of FCI-Cumberland, through counsel, moves for dismissal, or in the alternative, for summary judgment, arguing that Ivy has failed to exhaust his administrative remedies, and that his sentence has been properly calculated. ECF No. 4. Although advised of the opportunity to do so (ECF No. 5), Ivy has not responded. A hearing is not needed to resolve the case. *See* Loc. Rule 105.6 (D. Md. 2016). For reasons stated herein, the motion shall be granted and the petition shall be DENIED and DISMISSED.

Ivy alleges that he was taken into custody by the United States Marshal on March 16, 2011. ECF No. 1, p. 8. He states that he was sentenced on July 26, 2012, and remains in federal custody. He states that he was never returned to state custody and claims that he has been "shorted approx[imately] 16 months." *Id.*

The material facts of the case are not in dispute. Ivy was convicted in the United States District Court for the District of Ohio of violating the Racketeer Influenced and Corrupt Organization Act (RICO), being a felon in possession of a firearm, and drug trafficking

conspiracy charges. ECF No. 4-2 (Johnson Declaration ¶ 6); ECF No. 4-3, p. 3 (Public Information Inmate Data). He was sentenced to an 84 month term of confinement. *Id*. His projected release, with the accrual of good conduct credits, is March 24, 2018. *Id*.

Ivy was arrested by Ohio state authorities on September 7, 2010, for breaking and entering and for possession of criminal tools. ECF No. 4-2, ¶ 7. He was released on bond on September 16, 2010, but arrested for bond violation on those charges on December 16, 2010. *Id*.

On January 19, 2011, Ivy was sentenced in an Ohio state court to one year of incarceration for violation of probation imposed in a prior case. ECF No. 4-2, ¶ 8; ECF No. 4-3, p. 6 (Mahoning County, Ohio Judgment Entry 08CR1506). On January 21, 2011, he was sentenced in Ohio state court to one year incarceration for the 2010 breaking and entering charge, as well as one year incarceration for the 2010 possession of criminal tools charge. ECF No. 4-2, ¶ 9, ECF No. 4-3, p. 9 (Mahoning County, Ohio Judgment Entry 10CR1507). The sentences were to run concurrently, as well as concurrently to the violation of probation sentence imposed on January 19, 2011. *Id*. Ivy received state jail credit from September 7 to 16, 2010 (the time from his initial arrest to release on bond) and from December 16, 2010 to January 30, 2011 (the time from re-arrest for he bond violation through his commitment to the Ohio Department of Rehabilitation and Correction ("DRC")). ECF No. 4-2, ¶ 10, ECF No. 4-3, pp. 13-14 (Ohio DRC letter); p. 16 (Ohio Sentence Monitoring Independent Sentence Computation). He was transferred to the Ohio DRC on January 31, 2011. *Id*.

A petition for writ of habeas corpus ad prosequendum was filed in the United States District Court for the District of Ohio on March 16, 2011, seeking Ivy's appearance in that court on charges of RICO conspiracy, conspiracy to possess with intent to distribute crack, and felon in possession of a firearm. ECF No. 4-2, ¶11, ECF No. 4-3, p. 18 (Petition for Writ of Habeas

Corpus ad Prosequendeum). Pursuant to the writ, Ivy was temporarily taken from state custody into federal custody by the United States Marshals Service (USMS).[1] *Id*. While in temporary federal custody, Petitioner completed his state term of imprisonment. On December 12, 2011, he was released to the full custody of the USMS. ECF No. 4-2, ¶ 12; ECF No. 4-3, p. 16.

Ivy pleaded on May 18, 2010, to the RICO conspiracy, conspiracy to possess with intent to distribute crack, and two counts of being a felon in possession of a firearm. ECF No. 4-2, ¶ 13; ECF No. 4-3, pp. 27-33. On July 26, 2012, he was sentenced to a total term of incarceration of seven years. *Id*.

Ivy's federal sentence has been computed by the Federal Bureau of Prisons (BOP) as commencing on July 26, 2012, the date his sentence was imposed. ECF No. 4-2, ¶ 14; ECF No. 4-3, p. 35 (Sentence Monitoring Computation Data). He has been credited for prior custody from December 13, 2011 (the day after he completed his state sentence) to July 25, 2011 (the day before his federal sentence commenced). *Id*. Petitioner was not awarded prior custody credit from March 17, 2011 through December 12, 2012, because he received credit toward his state sentence for that period of incarceration. ECF No. 4-2, ¶ 15; ECF No. 4-3, p. 38 (BOP Program Statement 5880.28).

On September 11, 2014, Ivy filed an administrative remedy with the FCI-Cumberland Warden challenging the BOP's sentence computation. ECF No. 4-2, ¶ 17; ECF No. 4-3, p. 43 (Administrative Remedy Generalized Retrieval). Relief was denied. ECF 4-3, p. 43. Ivy appealed to the regional level on October 21, 2014. *Id*., p. 44. The appeal was rejected for failure to attach his BP-9 form. *Id*. He resubmitted an appeal, on November 13, 2014, which was rejected. *Id*. Ivy claims he filed an appeal to the Office of General Counsel, "but it was returned over a month

---

[1] Ivy contends he was taken into custody on March 16, 2011. ECF No. 1, p. 8. Records reflect he was taken into custody on March 17, 2011. ECF No. 4-3, pp. 22-25.

later" and "[a]t that point it was too late." ECF No.1, p. 6. There is no record that Ivy appealed to the Central Office Level. ECF No. 4-2, ¶ 17; ECF No. 4-3, pp. 42-44.

### Standard of Review

A.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc*., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

    B.    Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In *Anderson,* the Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## **Analysis**

It is the responsibility of the United States Attorney General, the Department of Justice and the Federal Bureau of Prisons to compute sentences of prisoners committed to the custody of the United States or the District of Columbia and apply credit where it is due. *See* 18 U.S.C. § 3624; *see also Leavis v. White*, 898 F.2d 154 (6th Cir. 1990) (citing *United States v. Norman*, 767 F.2d 455, 457 (8th Cir.1985)); *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir.1979); *see also United States v. Mitchell*, 845 F.2d 951, 952 (11th Cir.1988) ("[A] federal district court does not have jurisdiction to entertain a federal prisoner's petition for jail time credit until the prisoner has exhausted his administrative remedies with the Attorney General under 18 U.S.C. § 3568."). In the event a prisoner disputes the computation of his sentence or the application of

credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the Bureau of Prisons facilities. *See* 28 C.F.R. § 542.10 *et seq*.

The Administrative remedy process provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

The record evidence demonstrates that while Ivy began his administrative process as to the computation of his sentence, he is yet to complete it. In this case, it is clear that Ivy has not exhausted his administrative remedies, and he has provided no valid excuse for his failure to do so. Accordingly, the Petition for Writ of Habeas Corpus is subject to dismissal.

Even if Ivy had exhausted his administrative remedies, he is nevertheless not entitled to relief. After a federal district court sentences a federal offender, the Attorney General, through the BOP, is responsible for administering the offender's sentence. 18 U.S.C. § 3621(a); *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also United States v. Stroud*, 584 Fed. Appx. 159, 160 (4th Cir. 2014) (holding Attorney General, through the BOP, responsible for computing sentencing credit for time in detention prior to sentencing). Under 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention

facility at which the sentence is to be served." If there is no clear intent by the sentencing judge to make a term of confinement concurrent with another sentence, the sentence is consecutive. *See* 18 U.S.C. § 3584 ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."). Under 18 U.S.C. § 3585(b) a defendant is not entitled to credit toward the service of a term of imprisonment if the period of time in question has been credited against another sentence. *See McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (intent of 18 U.S.C. § 3585(b) is to prevent double credit incurred before commencement of sentence).

A federal sentence does not begin until the Attorney General receives the defendant into federal custody for service of that sentence. 18 U.S.C. § 3585(a). Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed **that has not been credited against another sentence**.

(emphasis added). The statute clearly establishes that a defendant is not entitled to "double credit" his detention time by receiving credit toward both the state sentence and federal sentence before the federal sentence is imposed. *Wilson,* 503 U.S. at 337. Indeed, a federal sentence cannot begin prior to the imposition of the federal sentence. 18 U.S.C. § 3585(a).

This Court must also consider which sovereign – state or federal – has primary jurisdiction over the defendant. When a defendant has both state and federal charges, the sovereign that first arrests the defendant is the sovereign that obtains primary jurisdiction over him or her, and that sovereign retains primary jurisdiction until it is relinquished. *Thomas v.*

*Whalen*, 962 F.2d 358, 361 (4th Cir. 1992); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). Primary jurisdiction may be relinquished by expiration of the defendant's sentence. *See, e.g., Cole*, 416 F.3d at 897.

Once a sovereign relinquishes primary jurisdiction over an individual, another sovereign may assume primary jurisdiction over that person. *Id*. Primary jurisdiction is not relinquished merely because a defendant is borrowed from the custody of the state via a writ of habeas corpus *ad prosequendum* for purposes of conducting criminal proceedings. *Id*.; *Taylor v. Reno*, 164 F.3d 440, 445 (9th Cir. 1998). Following the completion of its criminal proceedings, the receiving jurisdiction returns the defendant to the jurisdiction from which he was borrowed pursuant to the writ; the jurisdiction that "loans" a defendant to another sovereign for prosecution does not relinquish primary jurisdiction over that inmate. *Cole*, 416 F.3d at 896–97; 18 U.S.C. § 3585(a).

Ivy was first arrested by Ohio state authorities on September 7, 2010. ECF No. 4-2, ¶ 7. He was released on bond and then re-arrested on December 16, 2010. *Id*., ¶¶ 7, 10. As such, Ohio maintained primary jurisdiction over him. While serving his state sentences, Ivy was taken into temporary custody by federal authorities on March 17, 2011, for the purpose of federal criminal proceedings. Primary jurisdiction during his time was not relinquished from Ohio; rather federal authorities merely "borrowed" Ivy to complete the prosecution of his pending federal case. Ivy continued to receive state credit for serving his state sentence during this time, until the expiration of his state sentence on December 12, 2011. In accordance with 18 U.S.C. § 3585(b), Ivy cannot receive credit for this time toward his federal sentence, because that would constitute impermissible double credit for the same time period; furthermore, 18 U.S.C. §

3585(a) prohibits his sentence from commencing prior to the date it was imposed. Ivy has received all the prior custody credit to which he was entitled.

In light of the foregoing, the Petition will be dismissed and Respondent's Motion to Dismiss shall be granted. A separate order follows.

12/14/17                                         /S/
---------------                                  ---------------
Date                                             Paula Xinis
                                                 United States District Judge